UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL K. BLOCH,

    Plaintiff,

v.                                            Case No. 07-C-0478

ROCKWELL LIME COMPANY,

    Defendant.

---

**DECISION AND ORDER**

---

Plaintiff Michael K. Bloch sued his former employer, Rockwell Lime Company ("Rockwell"), for retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Rockwell, seeking competitive bids for group health insurance, requested its employees authorize the disclosure of their protected health information to insurance companies for the purpose of pre-enrollment underwriting and risk rating. Bloch alleges that Rockwell retaliated against him by disciplining him and ultimately terminating his employment after he publicly opposed Rockwell's request. Rockwell has now moved for summary judgment. For the reasons stated herein, the motion for summary judgment will be granted.

**I. BACKGROUND**

Rockwell is a producer of dolomitic lime and stone, which it mines from its on-site open-pit quarry. (DPFOF ¶ 3.) Bloch began working for Rockwell in 1993 as a maintenance mechanic, and was promoted to the position of "Maintenance Leader" in July 1996. (DPFOF ¶¶ 11, 13.) In

addition to continuing his duties as a maintenance mechanic, this leadership position required Bloch to assign daily work orders, monitor the progress of projects, and keep jobs flowing in an orderly manner. (DPFOF ¶¶ 15-16.)

In late 2003, Rockwell met with its insurance broker regarding the need to renew its group health insurance policy. (DPFOF ¶ 129.) Rockwell decided to collect bids from insurance companies to determine whether switching from a partially self-funded to a fully-insured plan would be cost-effective. (DPFOF ¶¶ 130-132.) To collect bids, Rockwell needed each employee to complete a "Small Employer Uniform Application for Group Health Insurance" ("Application"), issued by the Office of the Commissioner of Insurance for the State of Wisconsin. (DPFOF ¶¶ 133-134.) The Application included an "Authorization to Use and Disclose Protected Health Information" ("Authorization"). (DPFOF ¶ 135.) The Authorization allowed "use and disclosure of protected health information for the purposes of pre-enrollment underwriting or risk-rating of health insurance coverage," and was valid for 2.5 years after signature. (DPFOF ¶ 137.)

On January 14, 2004, the Application was distributed to Rockwell employees with an explanation of its purpose. At meetings in early 2004 between management and Rockwell employees regarding the insurance renewal process, Bloch questioned the need for the two-and-a-half-year duration of the Authorization. (DPFOF ¶¶ 145-147.) Bloch believed that Rockwell considered him a health risk (PPFOF ¶ 9) and that the Authorization could be used in an unlawful manner. (PPFOF ¶ 17.) Bloch does not recall if he ever expressed his fear that the Authorization could be used for illegal purposes to Rockwell management. (DPFOF ¶¶ 152-53.) Although Bloch completed the requested Application, he never signed the Authorization, and was never questioned about his failure to do so. (DPFOF ¶¶ 155-56.) According to Bloch, an employee by the name of

David Luckow also objected to the Authorization, because it sought information about family members who did not obtain insurance through Rockwell. (DPFOF ¶ 158.) Luckow remains a Rockwell employee. (DPFOF ¶ 160.)

Bloch, however, has not been employed at Rockwell since July 2004. The parties dispute whether his termination was voluntary, but agree that it was preceded by disciplinary action. On February 10, 2004, Bloch was given a written warning for "harassment and fighting or using obscene, abusive or threatening language or gestures" in connection with his conduct in an argument with Chad Johnson, a fellow employee. (DPFOF ¶ 39.) During the argument, Bloch told Chad Johnson to "[q]uit acting like a f-ing idiot." (DPFOF ¶ 27; Bloch Dep. 122; 20-21, July 12, 2006.) Bloch claims cursing and rough language is common among Rockwell employees (PPFOF ¶¶ 2-3). Tracy Gallagher, Rockwell's Human Resource and Safety Director, gave Bloch the written warning after she investigated the incident. Chad Johnson was also given a written warning (DPFOF ¶ 45). Both he and Bloch were directed to go to the Employee Assistance Program for consultation. (DPFOF ¶¶ 40, 46.)

On March 29, 2004, Gallagher met with Bloch, telling him employees had complained to her about him, and instructing Bloch to improve the way he treated and communicated with other employees. (DPFOF ¶¶ 60-63.) She informed Bloch that he needed to assist with work rather than always delegating tasks (DPFOF ¶ 64), and that if his job performance did not sufficiently improve, "disciplinary action, up to and including termination, would be taken." (DPFOF ¶ 65.)

On July 16, 2004, Gallagher and John Johnson, Rockwell's Plant and Maintenance Department Supervisor, met with Bloch, giving him a second written warning and demoting him to maintenance mechanic. His demotion followed an incident in which Bloch criticized John

3

Johnson's order to make new "base plates" prior to a scheduled shut down of Rockwell's kilns for repair. (DPFOF ¶ 104; PPFOF ¶ 37.) Bloch had repeatedly called his supervisor's request for new plates stupid when he was asked to perform the work, and demanded other workers explain their rationale for following Johnson's order. (DPFOF ¶¶ 70-84, 87-90.) Bloch had also called a co-worker a pedophile, and expressed hope that the co-worker would be incarcerated for a long time. (DPFOF ¶¶ 84, 87; Bloch Dep. 203-04.) The warning reprimanded Bloch for abusive language, harassment, and fighting. (DPFOF ¶ 105.)

Bloch alleges that the discipline he received from Rockwell resulted from one-sided investigations conducted by Gallagher, who he claims was motivated by a desire to retaliate against him for opposing the Authorization. (Br. Opp. Mot. Sum. J. 3.) As Human Resource and Safety Director, Gallagher investigated allegations of misconduct by Rockwell employees. In addition to Bloch, she investigated complaints about Chad Johnson (DPFOF ¶¶ 44-46), Brian Hurda (Jarrell Dep. 54-55, July 25, 2006.), and Mark Crowe. (Crowe Dep. 30-31, July 25, 2006.)

On July 18th, Bloch placed a telephone call to Rockwell's Vice President of Operations, Donald Brisch, and set up a meeting with him for July 20th. (DPFOF ¶ 108.) Bloch told Brisch he was unable to perform his work duties because of unfair allegations against him at Rockwell. (*Id.*) Bloch also called Gallagher, claiming he was no longer able to perform his job because she had made false allegations against him. (DPFOF ¶ 113.) Bloch did not request off of work July 19th or 20th, but did not report to work either day. (DPFOF ¶¶ 116-118; Bloch Dep. 218; 7-20.) He did meet with Brisch on July 20, 2004, and expressed interest in continuing to work at Rockwell until he could find another position elsewhere. (DPFOF ¶ 122.) Bloch claims Brisch told him to "sever all ties with Rockwell . . . immediately." (DPFOF ¶ 124; PPFOF ¶ 45.)

4

Bloch filed complaints with the Wisconsin Equal Rights Division on August 4, 2004, May 9, 2005, and July 5, 2005, regarding his treatment by Rockwell. (DPFOF ¶¶ 161, 166, 168.) The parties dispute whether his complaints encompassed the retaliation claim now before the court. Bloch commenced this lawsuit on April 24, 2007, claiming that Rockwell retaliated against him for objecting to the Authorization, by disciplining and demoting him, and eventually terminating his employment. (DPFOF ¶ 174; Compl. 23.) Rockwell claims that Bloch never engaged in a "protected activity" within the meaning of the ADA, that the Authorization was lawful, and that Bloch quit his job after Rockwell demoted and disciplined him for unprofessional and inappropriate behavior in the workplace. Rockwell also alleges that Bloch failed to file a timely charge of retaliation, having identified other forms of discrimination on his early Wisconsin Equal Rights Division complaints.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Where the party seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* There is no requirement that a moving party who does not bear the burden of proof establish that the element does not exist. In

other words, a moving party who does not have the burden of proof at trial (usually the defendant) is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once the moving party has met its burden, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48.

### III. ANALYSIS

The ADA prohibits employers from making disability related inquiries of its employees unless such information is "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).[1] Its "safe harbor" provision[2] expressly authorizes employers to request employee

---

[1] The ADA provides, in pertinent part, that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature and severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

[2] The safe harbor provision, set forth in Subchapter IV of the ADA, 42 U.S.C. § 12212(d)(4)(A), states, in pertinent part:
Subchapters I-III of this chapter and title IV of this act shall not be construed to prohibit or restrict: (1) an insurer, hospital or medical service company, health maintenance organization, or any agent or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; (2) a person or organization covered by this chapter from establishing, sponsoring, observing, administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law[.]

medical information when establishing a benefit plan "in accordance with accepted principles of risk management." *Id.* at 1020. The ADA also provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a).

A plaintiff may establish a prima facie case of unlawful retaliation using either a direct or indirect method of proof. Under the direct method, a plaintiff must present evidence of: "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Squibb v. Memorial Medical Center*, 497 F.3d 775, 786 (7th Cir. 2007). Under the indirect method, a plaintiff must show that (1) he was engaged in statutorily protected activity; (2) he was performing his job according to his employer's legitimate expectations; (3) despite that performance, he suffered adverse action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004) (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

If a plaintiff establishes a prima facie case of retaliation, the burden of proof shifts to the defendant, who must articulate legitimate and non-discriminatory reasons for the adverse action. *See McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 371 (7th Cir. 1992). If the defendant articulates such a legitimate reason, the burden then shifts back to the plaintiff to show that the proffered reason is merely a pretext. *Id.*; *see also Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1459 (7th Cir. 1995).

Bloch claims that he has set forth a prima facie case of retaliation under both the direct and indirect method. Rockwell disagrees, and further contends that even if Bloch has set forth a prima

7

facie case, he has provided no evidence to support a claim that Rockwell's articulated reasons for disciplining him are a pretext for retaliation. Under either the direct or indirect method, Bloch must show that he engaged in statutorily protected activity before Rockwell's allegedly retaliatory actions. Therefore, I will first address whether he has met that burden.

### 1. Statutorily Protected Activity

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful" by the statute, 42 U.S.C. § 12203(a). However, "even if the challenged conduct ultimately is found to be lawful," an individual engages in protected activity when he acts "in good faith and with a reasonable and sincere belief that he or she is opposing unlawful discrimination." *Roth*, 57 F.3d at 1459. "[I]n retaliation cases, whether under Title VII or the ADA, '[I]t is good faith and reasonableness, not the fact of discrimination that is the critical inquiry.'" *Talanda v. KFC Nat. Management Co.*, 140 F.3d 1090, 1096 (7th Cir. 1998) (quoting *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir. 1982)). Nonetheless, in order to be protected, "allegations cannot be without legal foundation, but must concern 'the type of activity that, under some circumstances, supports a charge . . . .'" *Hamner v. St. Vincent Hosp. and Health Care Center, Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) (quoting *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir. 1989)). In other words, a plaintiff "must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve [conduct] that is prohibited . . . ." *Hamner*, 224 F.3d at 707.

Thus, in order for Bloch to have engaged in an activity protected by the ADA's anti-retaliatory provision, he must have (1) opposed an act or practice, (2) with a good faith belief that

8

the act or practice was unlawful, and (3) the type of act or practice he opposed must, at least under some circumstances, be proscribed by the ADA, so as to make his belief objectively reasonable.

### A. Opposition

Bloch provides no evidence from which it can be inferred that he expressed opposition to anything except the duration of the Authorization. He claims Rockwell's request that he sign the Authorization caused him concern for two reasons. First, he feared that the Authorization could be used "in an unlawful manner," (Bloch Dep. 88; 21-22) and second, he thought the duration of the Authorization was unnecessarily long. (Bloch Dep. 93; 25.) However, Bloch admits he does not know whether he ever informed Rockwell of his concern that the Authorization could be used unlawfully. (Bloch Dep. 94; 8-13, 16.) He indicates that he would have signed the Authorization if the duration of the release were limited to two months (Bloch Dep. 94; 3), and that his concern was not with the fact that Rockwell wanted him to authorize the release of his medical information, but with the length of time the release would be valid. (Bloch Dep. 93; 25.) At meetings where Rockwell management and employees gathered to discuss the Application and Authorization, Bloch voiced his opinion that there was "no need to have a two-year" long release in the Authorization (Bloch Dep. 92; 16-19), and that any inquiries into the accuracy of the information employees provided should take "a couple of months, not two years." (Bloch Dep. 93; 21.) Bloch also suggested to Rockwell's insurance agent that the duration of the Authorization be limited to six months. (Bloch Dep. 97; 7-8.) These comments were the only objections Bloch made to Rockwell concerning the Authorization. (Bloch Dep. 98; 3-4.) They address only the duration of the Authorization.

Although he now contends that the Authorization violated Wisconsin Statute 610.70(2)(a)(5) because it failed to name the insurers to which his medical information would be disclosed (Br. Opp. Mot. Sum. J. 11), there is no evidence that Bloch ever opposed the Authorization on that basis prior to Rockwell's allegedly retaliatory acts. For purposes of his retaliation claim, I need only examine the legality of the practice Bloch opposed before the alleged retaliation. Here, the relevant practice is Rockwell's requirement that releases remain valid for 2.5 years.

### B. Sincere and Reasonable Belief

Bloch has not provided any evidence to support an inference that at the time he voiced his opposition to the Authorization's duration he had a sincere belief that the duration of the Authorization violated the ADA. His comments to Rockwell expressed no more than his personal disapproval and belief that the time period was longer than necessary. There is no evidence suggesting he told Rockwell he thought the duration of the Authorization was illegal under the ADA or violated any other law. When asked during his deposition whether he thought Rockwell's request that he sign the Authorization was unlawful, Bloch answered "I guess it's my belief that they can ask for the world if they want to." (Bloch Dep. 89; 3-4.)

Even if Bloch did believe the Authorization's duration violated the ADA, his opposition was not a protected activity, because the belief was unreasonable. Although he indicates that he thought it was "an invasion of privacy" (Bloch Dep. 92:18-19), that is insufficient. *See Barnes v. Benham Group, Inc.*, 22 F. Supp. 2d 1013, 1022-23 (D. Minn. 1998) (holding that a plaintiff's belief that questions on a health insurance enrollment form were unnecessary and violated his privacy did not constitute a good faith reasonable belief that the questions were illegal). Furthermore, the duration

10

of the Authorization complied with state law, placing Rockwell's request squarely within the "safe harbor" provision of the ADA, which authorizes employers to request employee medical information when establishing a benefit plan "in accordance with accepted principles of risk management." *Id.* at 1020.

Bloch contends that even if the Authorization was actually legal under the safe harbor provision, one could reasonably believe it violated the ADA, because it was a "medical inquiry," and therefore the "type of activity" that under some circumstances would violate the ADA. (Br. Opp. Sum. J. 9.) This argument is unpersuasive. Where a statute does not make a form of discrimination unlawful, neither does it protect opposition to that form of discrimination. *Hamner*, 224 F.3d at 707. Thus, in *Hamner* the Court held that although opposition to sex discrimination is protected activity under Title VII, opposition to sexual orientation discrimination is not since Title VII does not prohibit discrimination on account of sexual orientation. *Id.* In determining whether a plaintiff engaged in protected activity, the question is whether the plaintiff opposed the kind of discrimination that is proscribed by law. *Id.* The same logic applies here.

Just as Title VII does not prohibit all forms of discrimination, the ADA does not prohibit all forms of inquiry into employee medical information. Medical inquiries by employers are lawful if "job-related" and "consistent with business necessity," or otherwise permitted by the safe harbor provision. 42 U.S.C. § 12212(d)(4)(A). Therefore, the relevant issue in this case is whether the type of conduct Bloch voiced opposition to can violate the ADA. He only expressed opposition to the two-and-a-half-year duration of an Authorization to disclose medical information for the purpose of establishing an employee benefit plan. This type of inquiry is simply not proscribed by the statute. To the contrary, it is explicitly authorized.

11

I conclude that Bloch did not engage in statutorily protected activity. However, even if he did, Bloch still could not establish a prima facie case of retaliation under either the direct or indirect methods of proof.

**2. Direct Method**

Bloch's claim necessarily fails under the direct method because he cannot show a causal connection between his opposition to the Authorization and the adverse action taken by Rockwell. "[U]nder the direct method a plaintiff must provide direct or circumstantial evidence that the decisionmaker has acted for a prohibited reason." *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003). Direct evidence is "evidence that, if believed by the trier of fact, would prove the fact in question 'without reliance on inference or presumption.'" *Rogers*, 320 F.3d at 753 (quoting *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001)). It "essentially requires an admission," *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000), or "[r]emarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria . . . ." *Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570, 574 (7th Cir. 2001) (quoting *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001)). Bloch presents no evidence that Rockwell admitted or suggested by its remarks that it took action against him because he complained about the Authorization.

Circumstantial evidence allows a jury to infer intentional discrimination by the decisionmaker. *Rogers*, 320 F.3d at 753. However, suspicious timing alone does not support such an inference. *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006). "The mere fact that one event preceded another does nothing to prove that the first event caused the

12

second. Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Bloch does not identify any circumstantial evidence besides the timing of Rockwell's actions to support his claim of retaliation.

Accordingly, Bloch fails to demonstrate a causal connection between his opposition to the Authorization's duration and Rockwell's adverse actions. His claim cannot survive summary judgment under the direct method of proving retaliation.

### 3. Indirect Method

Bloch also fails to establish a prima facie case under the indirect method. There is no evidence that he performed his job according to Rockwell's legitimate expectations, or that he was treated less favorably than similarly situated employees who did not object to Rockwell's request. As evidence that his job performance met Rockwell's expectations, Bloch states that in 2004 he performed his job at Rockwell in the same manner as he had for the previous ten years (Br. Opp. 18), with the same leadership style and "aggressive nature." (Br. Opp. 15.) Thus, he claims, "[i]f Rockwell had a problem with [his] leadership style or use of rough language, Rockwell turned a blind eye . . . for a period [of] ten years." (Br. Opp. 15.) However, Rockwell did not have the benefit of a trained human resources employee with experience in handling personnel issues until Gallagher was hired in November 2003. Such a significant change in circumstances may well have enabled Rockwell to enforce expectations it previously could not.

Bloch does not refute that his co-workers complained about his behavior to Rockwell management, and concedes that he needed their respect to be effective as a Maintenance Leader.

13

(DPFOF ¶ 18.) He admits that he engaged in the conduct Rockwell deemed inappropriate, such as directing profanity at a fellow employee (Bloch Dep. 115; 19-25) and criticizing a supervisor's order as "stupid." (Bloch Dep. 196; 15-19.)

Moreover, Bloch does not identify a single similarly situated employee who did not engage in statutorily protected activity and was treated more favorably by Rockwell. In fact, the record reveals that Rockwell disciplined employees who did not oppose the Authorization just as it did Bloch. For example, in response to the argument between Bloch and Chad Johnson, Rockwell gave both men written warnings, and both were directed to go to the Employee Assistance Program, although Chad Johnson never expressed opposition to the Authorization. (DPFOF ¶¶ 39, 40, 45, 46.) Also telling is evidence that David Luckow, who did voice opposition to the Authorization to Rockwell management (DPFOF ¶ 158), remains a Rockwell employee. (DPFOF ¶ 160.)

For these reasons, Bloch fails to establish a prima facie case of retaliation under the indirect, as well as the direct, method. Nonetheless, Rockwell has proffered Bloch's inappropriate behavior toward other Rockwell employees as a legitimate and non-discriminatory reason for its actions. Therefore, even if Bloch were able to establish a prima facie case, he would have to show this articulated reason to be merely a pretext. *McCoy*, 957 F.2d at 371. He does not do so.

### 4. Pretext

Even if the record were to otherwise sustain Bloch's retaliation claim, it does not support the claim that Rockwell's reasons for disciplining him were pretextual. Bloch claims that "Rockwell's justifications are nothing more than a pretext," (Br. Opp. 17) because "Rockwell did not tell any other employees who allegedly used rough language to sever their ties with Rockwell

14

Lime Company." (Id.) However, even if "rough language" was common at Rockwell, as Bloch alleges (Br. Opp. 16), he admits to engaging in conduct more egregious than the general use of rough language. He offers no evidence that Rockwell commonly allowed employees to direct profanity at one another, call one another derogatory names, criticize one another for following legitimate orders, or exhibit insubordination to supervisors. Thus, whether other employees used rough language or not, Bloch has not shown pretext.

Bloch also claims that Rockwell's responses to his behavior were irrational (Br. Opp. 17), but the court is not authorized "to sit as a kind of 'super-personnel department' weighing the prudence of employment decisions." *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997) (citation omitted). When evaluating the justifications an employer articulates, the court is concerned only with "whether the employer honestly believes in the reasons it offers." *Grayson v. O'Neill* 308 F.3d 808, 820 (7th Cir. 2002). Bloch does not provide the court with any evidence that Rockwell did not honestly believe that he engaged in behavior that warranted discipline. He makes no other arguments against Rockwell's justifications. Having presented "unrebutted evidence of a noninvidious reason for the adverse action," Rockwell is entitled to summary judgment. *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003).

### 5. State Law Claim

Although Bloch claims that Rockwell "violated the Americans with Disabilities Act and Wisconsin law by retaliating" against him (Compl. 6), he does not identify which state law Rockwell allegedly violated. Rockwell, in support of its motion for summary judgment, has identified the Wisconsin Fair Employment Act ("WFEA") Wis. Stats. § 111.31 *et seq.*, as a

15

Wisconsin law prohibiting employers from discharging or otherwise discriminating "against any individual because he or she has opposed any discriminatory practice under [the WFEA]." Wis. Stat. § 111.322(3). However, Rockwell correctly notes that Bloch cannot maintain a private cause of action under the WFEA. *See Staats v. County of Sawyer*, 220 F.3d 511, 516 (7th Cir. 2000) ("[T]he Equal Rights Division was the exclusive forum in which [plaintiff] could bring his WFEA claims: the WFEA does not create a private right of action."). Bloch has failed to clarify his state law claim further in response to Rockwell's motion. He has provided no evidence to support a claim of retaliation under Wisconsin law. Accordingly, to the extent Bloch asserts a state law claim, that too will be dismissed.

## IV. CONCLUSION

I conclude that Bloch cannot establish a prima facie case that Rockwell retaliated against him in violation of the ADA, and has provided no evidence that Rockwell's proffered reasons for his discipline are mere pretext. Bloch's vague allegation that Rockwell retaliated against him in violation of state law is insufficient for that claim to survive. Accordingly, Rockwell's motion for summary judgment is granted and this action is dismissed with prejudice.

**SO ORDERED** this   4th   day of December, 2007.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge